IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA AMMONS, | ) | CASE NO. 5:12 CV 618 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. § 1383(c) by Angela Ammons for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2] The Commissioner has filed an answer,[3] as well as a transcript of the administrative proceedings.[4] Pursuant to my initial order[5] and procedural

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 12.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

order,[6] the parties have briefed their positions[7] and filed supporting charts[8] and the fact sheet.[9] The parties have participated in a telephonic oral argument.[10]

For the reasons that follow, I will find that the decision of the Commissioner is not supported by substantial evidence and must, therefore, be reversed and remanded for further proceedings.

## Facts

**A.     Decision of the Administrative Law Judge ("ALJ")**

Ammons, who was born in 1974,[11] has a GED[12] and previously worked as a janitor, fast food worker, and home health aide.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Ammons had severe impairments consisting of bipolar disorder with psychotic episodes and

---

[6] ECF # 16.

[7] ECF # 19 (Ammons's brief); ECF # 22 (Commissioner's brief).

[8] ECF # 19, Attachment 1 (Ammons's charts); ECF # 22, Attachment 1 (Commissioner's charts).

[9] ECF # 15 (Ammons's fact sheet).

[10] ECF # 25.

[11] ECF # 15 at 1.

[12] Transcript ("Tr.") at 197.

[13] ECF # 15 at 1.

panic disorder with agoraphobia.[14] The ALJ made the following finding regarding Ammons's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to not working at heights or around moving machinery due to dizzy and drowsy episodes. She should not work in any capacity that would require more than occasional need to interact with co-workers and supervisors, and there should be no need to interact with the public.[15]

Given that residual functional capacity, the ALJ found Ammons capable of her past relevant work in a cleaning/janitorial position and, therefore, not under a disability.[16]

**B.     Issues on judicial review**

Ammons presents two issues for decision:

- Whether the ALJ's assessment of Ammons's mental residual functional capacity is supported by substantial evidence, particularly in light of the findings and opinions of Ammons's treating psychiatrist and other treating sources?[17]

- Whether the ALJ erred in failing to find Ammons disabled given the medical and vocational evidence of record?[18]

---

[14] Tr. at 30.

[15] *Id.* at 32.

[16] *Id.* at 35.

[17] ECF # 19 at 1.

[18] *Id.*

As noted, I will find that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.   *Treating physician rule and good reason requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

---

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[22] 20 C.F.R. § 404.1527(d)(2).

[23] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[29] *Id.* at 535.

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

-6-

the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

[34] *Id.*

[35] *Id.*

[36] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[38] Second, the ALJ must identify for the record evidence supporting that finding."[39] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[40]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[41] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving

---

[37] *Id.*

[38] *Wilson*, 378 F.3d at 546.

[39] *Id.*

[40] *Id.*

[41] *Rogers*, 486 F.3d at 242.

those opinions controlling weight.[42] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[43] or that objective medical evidence does not support that opinion.[44]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[45] The Commissioner's *post hoc* arguments on judicial review are immaterial.[46]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

---

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[44] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[45] *Blakley*, 581 F.3d at 407.

[46] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[47]

- the rejection or discounting of the weight of a treating source without assigning weight,[48]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[49]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[50]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[51] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[52]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[53] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless

---

[47] *Blakley*, 581 F.3d at 407-08.

[48] *Id.* at 408.

[49] *Id.*

[50] *Id.* at 409.

[51] *Hensley*, 573 F.3d at 266-67.

[52] *Friend*, 375 F. App'x at 551-52.

[53] *Blakley*, 581 F.3d 399.

since substantial evidence exists to support the ultimate finding.[54] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[55]

In *Cole v. Astrue*,[56] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[57]

**B. Application of standards – the decision of the ALJ is not supported by substantial evidence and so must be reversed.**

The central issue here involves the ALJ's treatment of the opinion of Patricia Forman, M.D., Ammons's treating psychiatrist. Dr. Forman completed an RFC assessment in 2009[58] and a medical source statement in 2010,[59] which both opined that Ammons was easily stressed and could not maintain concentration or attention for extended periods. The

---

[54] *Id*. at 409-10.

[55] *Id*. at 410.

[56] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[57] *Id.* at 940.

[58] Tr. at 368-69.

[59] *Id*. at 369-70.

-11-

ALJ, however, assigned these opinions only "some probative weight, but not controlling weight." The ALJ concluded, based on the treatment notes, that while Ammons may have had periodic episodes of disability, Dr. Forman's "longitudial observations ... showed [Ammons] to be stable in the long term."[60]

By contrast, the ALJ assigned "great weight" to the 2008 RFC opinion of T. Rodney Swearingen, Ph.D.,[61] a consulting examiner.[62] Dr. Swearingen, as the ALJ observed, found impairments and limitations, but determined that most of them were mild.[63] But Dr. Swearingen also noted, as the ALJ also observed, that Ammons's "ability to withstand the stress and pressure associated with day-to-day work activity was markedly impaired."[64]

In this regard, both Dr. Forman and Dr. Swearingen rate Ammons's ability to withstand the daily stress of work to be markedly impaired. The Commissioner argues that by limiting her employment to janitorial work and by otherwise restricting the RFC finding, the ALJ adequately dealt with Ammons's acknowledged marked impairment as to stress, and

---

[60] ECF # 22 at 9 (citing transcript).

[61] John S. Reece, Psy.D., actually conducted the examination and signed the examination form, but the opinion was issued on Dr. Swearingen's letterhead. *See.*, Tr. at 330-31. Because there is no dispute that this examination is the one referred to and relied upon by the ALJ, and because the ALJ refers to this opinion as being from Dr. Swearingen, I have continued to use that name in referring to the opinion.

[62] Tr. at 33.

[63] *Id*.

[64] *Id*.

should not be required to adopt the entirety of Dr. Forman's opinion.[65] The Commissioner further contends that Ammons has not shown how additional restrictions on avoiding job stress would preclude her from performing her past relevant work as a janitor.[66]

But, as the Commissioner acknowledged at the oral argument, Ammons's marked impairment in the ability to withstand work stress is not part of the RFC and so was not part of the hypothetical question posed to the vocational expert ("VE"). Thus, neither the VE's testimony at the hearing nor the ALJ's opinion specifically address the effects, if any, such a marked limitation would actually have on either Ammons's ability to perform her past relevant work or any other jobs existing in the national economy.

In addition, I particularly note that, with the existing RFC that includes no restrictions on stress, the VE limited the base of janitorial jobs to those which are performed on the second or third shift, that do not have any contact with the public, and only occasional contact with co-workers.[67] While the Commissioner asserted at the oral argument that no further reduction in available janitorial jobs would occur with an additional RFC restriction on stress, that is a question for the VE – and, as noted, a question that was neither asked nor answered here.

Thus, I find first that it was error for the ALJ to discount the RFC opinion of Dr. Forman, a treating source, in favor of the opinion of Dr. Swearingen when both opinions

---

[65] ECF # 22 at 11.

[66] *Id.*

[67] Tr. at 36.

contained a marked limitation on Ammons's ability to handle work stress and that particular limitation was neither adopted in the RFC nor was an explanation given as to why it was excluded. Further, the effect of such a limitation on Ammons's ability to do her past relevant work as a janitor was never presented to the VE for an opinion as to what such a limitation would do to the number of janitorial jobs available.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Ammons had no disability. Accordingly, the decision of the Commissioner is reversed, with the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 26, 2013 　　　　　　　　　　　s/ William H. Baughman, Jr.
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge